IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEOFFREY PETE,

    Plaintiff,

  v.

CITY OF OAKLAND, KYLE THOMAS, MIKE MORSE, DAVID KOZICKI, PEDRO ESPINOZA, DOWNTOWN REALTY COMPANY, INC. AND DOES 3–100,

    Defendants.

No. C 09-06097 WHA

**ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND VACATING HEARING**

## INTRODUCTION

In this civil rights action, defendant Downtown Realty Company, Inc. moves to dismiss the sole claim asserted against it by plaintiff, Geoffrey Pete. For the following reasons the motion is **GRANTED**.

## STATEMENT

Plaintiff commenced this action in December 2009, the complaint identified as defendants the City of Oakland, police officers/administrators Kyle Thomas, Mike Morse, David Kozicki and Pedro Espinoza (Dkt. No. 1). A first amended complaint was filed in May 2010, identifying for the first time Downtown Realty Company, Inc. as a named defendant (Dkt. No. 20).

On August 11, Downtown Realty forwarded a meet and confer letter to plaintiff's counsel advising of its intent to file a motion to dismiss the first amended complaint pursuant to

1  FRCP 12(b)(6) (Mulvihill Decl. ¶ 2).  In response, plaintiff's counsel advised that she would
2  amend the complaint and Downtown Realty agreed by stipulation to allow plaintiff to filing a
3  second amended complaint, but only on the condition that the stipulation was without prejudice
4  to file the instant motion to dismiss (*ibid.*).

5  The second amended complaint alleges that Downtown Realty is the owner of the
6  Downtown Merchants Parking Association (DMPA) parking garage at 1316 Franklin Street in
7  Oakland (Second Amd. Compl. ¶ 6).  Plaintiff is a promoter of cultural and entertainment events
8  in Alameda County and was the owner and operator of Geoffrey's Inner Circle, an entertainment
9  venue in downtown Oakland (Second Amd. Compl. ¶ 10).  Plaintiff alleges that in
10 December 2008, the manager of the DMPA garage informed him that he would no longer be
11 allowed to rent or utilize the DMPA garage (Second Amd. Compl. ¶ 12).  Plaintiff alleges that
12 DMPA refused to rent to him in order to deprive him and African Americans, who constitute a
13 majority of his clientele, access to a public facility based on race (*ibid.*).

14 More specifically plaintiff alleges that Oakland police falsely reported to the DMPA that
15 a shooting occurred when a DMPA garage was rented to and in care of plaintiff, that Downtown
16 Realty knew or had reason to believe these accusations were false, and that Downtown Realty
17 nevertheless proceeded to cooperate with and further the Oakland police's racially-motivated
18 goal of injuring plaintiff and denying the rights of African Americans to assemble in downtown
19 Oakland (Second Amd. Compl. ¶ 13).

20 Additionally, plaintiff alleges that the information reported by the Oakland police was
21 false, was made for the purpose of causing injury to him on account of his status as an African
22 American, and was made for the purpose of denying and prohibiting assembly of African
23 Americans.  According to plaintiff, as a direct and proximate result of the false information, his
24 sixteen-year relationship with the DMPA garage was terminated (Second Amd. Compl. ¶ 14).
25 Downtown Realty is alleged to have acted with conduct that was intentional, oppressive,
26 malicious, fraudulent and/or done with a conscious or reckless disregard for plaintiff's rights
27 (Second Amd. Compl. ¶ 37).
28

2

Based on these allegations, plaintiff asserts that Downtown Realty violated California Civil Code Section 52.1 through the use of prohibited conduct of threats, intimidation or coercion, which interfered with plaintiff's state and federal constitutional rights (Second Amd. Compl. ¶ 51).

**ANALYSIS**

FRCP 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Parks Sch. Of Business v. Symington*, 51 F .3d 1480, 1484 (9th Cir. 1995). All material allegations in the complaint are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F .3d 336, 337–38 (9th Cir. 1996). A complaint attacked by a FRCP 12(b)(6) motion to dismiss does not need detailed factual allegations. Plaintiff's obligation to provide the grounds for entitlement of relief, however, requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Ibid*.

California Civil Code Section 52., otherwise known as the Tom Bane Civil Rights Act, states that if a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of California, then that person or persons may have a civil action brought against them for damages, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of rights secured.

While no California court has interpreted the terms "threats, coercion, or intimidation," the legislative history of California Civil Code 52.1 establishes that the statute was designed to deter violence. *D.C. v. Harvard-Westlake School*, 176 Cal. App. 4th 836, 857 (2009). California Civil Code Section 52.1 was intended to supplement the Ralph Civil Rights Act as an additional legislative effort to deter violence. *Ibid*. The purpose of the bill was "to fill in the gaps left by the Ralph Act" by allowing an individual to seek relief in order to prevent violence from occurring before it was committed and before the filing of criminal charges. *Ibid*. At its

3

1  inception, the purpose of California Civil Code Section 52.1 was to add "threats, intimidation or
2  coercion" to the already proscribed "violence, or threats of violence" sanctioned under the
3  Ralph Act, where any such conduct interferes with or attempts to interfere with the statutory and
4  constitutional rights of persons in protected classes, or who were perceived to be members of
5  such protected classes. *Id*. at 359.

6  Here plaintiff alleges that defendant threatened, coerced, or intimidated him by refusing
7  to rent the parking garage to him. Plaintiff, however, has not alleged that any threats were made
8  to him by Downtown Realty, express or implied, or that he was subjected to any physical
9  confrontation, or actual force which interferes with plaintiff's right to free association and
10 assembly. Aside from alleging any threats of violence, plaintiff has failed to factually allege any
11 nonviolent form of threats, intimidation or coercion by Downtown Realty which interfered with
12 his rights. Plaintiff has simply concluded that Downtown Realty's conduct of refusing to rent
13 the garage was intended to deprive plaintiff and African Americans of the right to assembly and
14 association. Even given the liberal pleading standard under FRCP 8(a), plaintiff has not stated
15 sufficient facts to support an allegation that defendant used threats, coercion, or intimidation to
16 state a claim under California Civil Code Section 52.1. Defendant's motion to dismiss is
17 **GRANTED**.

## CONCLUSION

19 For the foregoing reasons, the motion to dismiss plaintiff's California Civil Code
20 Section 52.1 claim against defendant Downtown Realty Company is **GRANTED**. The hearing
21 previously set for October 7, 2010, is hereby **VACATED**. Plaintiff's motion to file a third
22 amended complaint will proceed on its current briefing schedule.

**IT IS SO ORDERED.**

25 Dated: October 4, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4